**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1580-18T1

NIDIA J. RIVERA,

     Plaintiff-Appellant,

v.

JUAN CANSEO and
BRENDA REALI,

     Defendants-Respondents.

_____

         Submitted December 5, 2019 – Decided December 17, 2019

         Before Judges Nugent and DeAlmeida.

         On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. SC-000548-18.

         Nidia J. Rivera, appellant pro se.

         Respondents have not filed a brief.

PER CURIAM

Plaintiff Nidia J. Rivera appeals from the October 31, 2018 order of the Special Civil Part dismissing her complaint for damages incurred as a result of her dog becoming ill while in defendants' care. We affirm.

I.

The following facts are derived from the record. Rivera owns a female chihuahua. Defendant Juan Canseo owns a male chihuahua. Rivera and Canseo reached an oral agreement to have their dogs mate. Rivera was to obtain puppies from the mating and Canseo was to receive consideration for the use of his dog.[1]

Rivera brought her dog to Canseo's home, along with an adequate supply of a brand of dog food to which the dog was accustomed. According to Rivera, her dog was in good health when she left her at Canseo's home. Canseo placed Rivera's dog and his dog in the basement together.

The following day, Canseo telephoned Rivera to report her dog refused to eat the food she left and instead ate some of his dog's food. He also told Rivera her dog had loose stool. Although Rivera wanted to pick up the dog, Canseo convinced her to wait until the next day to give the dogs additional time to mate.

---

[1] The parties dispute the consideration to be paid Canseo. He testified he was to be paid $500, regardless of whether Rivera's dog was impregnated. Rivera testified Canseo was to receive the pick of the litter if the mating ultimately resulted in the birth of puppies. The exact nature of Canseo's expected consideration is not material to our analysis of Rivera's claims.

A-1580-18T1

Rivera sent her daughter to pick up the dog the next day. When her daughter first arrived at Canseo's home the dog was locked alone in the basement. Defendant Brenda Reali, Canseo's wife, said she did not have the key to the basement door and Rivera's daughter would have to return after Canseo arrived home. On her second visit that day, Rivera's daughter retrieved the dog from Canseo and brought it to Rivera.

Rivera immediately noticed the animal appeared sick and dehydrated. She took the dog to a veterinarian who treated the animal overnight with fluids and antibiotics. The dog recovered and is not carrying puppies. Rivera incurred $1,276.58 in veterinarian fees. Veterinarian records indicate the dog suffered from hypoglycemia, dehydration, and hyperphosphatemia, secondary to young age and dehydration. The records do not identify a cause of the dog's illness and do not attribute her symptoms to either a lack of food or ingestion of food to which the dog was unaccustomed.

Rivera filed a complaint in the Special Civil Part, seeking $1,336.28 in damages from defendants for neglect and abuse of her dog.[2]

---

[2] Although Rivera sought $1,336.28 in damages in the complaint, the evidence admitted at trial established $1,276.58 in veterinarian fees.

A-1580-18T1

On October 31, 2018, a trial was held before Judge Mark Cimino. After hearing the testimony of Rivera and Canseo, and reviewing the veterinarian's records, the judge concluded Rivera had not established by a preponderance of the evidence defendants caused her dog to become ill. As the judge explained:

> I read through this report, and nowhere in this report does it say that . . . somehow that they're at fault. And, that's the problem. It doesn't say because of their poor care, or . . . that this dog has[ not] been fed properly . . . it does[ not] say anything like that in here in this report. It just says that the dog was noted to be dehydrated.
>
>      . . . .
>
> It says, the dog has[ not] eaten since Sunday, not that the dog . . . has[ not] been fed. That's a very big difference.
>
>      . . . .
>
> And, the doctor does[ not] say . . . that they gave the dog the wrong food, or . . . anything about the dog having the wrong food, or the diet being off.

On October 31, 2018, the trial court entered an Order dismissing the complaint.

This appeal followed. Plaintiff raises the following argument:

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGEMENT [SIC] TO PLAINTIFF [SIC] BECAUSE THE PLAINTIFF DID NOT HAVE SUFFICIENT EVIDENCE OF LIABILITY BEING HELD AGAINST THE DEFENDANTS IN THIS MATTER.

4

II.

Our scope of review of the judge's findings in this nonjury trial is limited. We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). This court's "[a]ppellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

Having carefully reviewed Rivera's arguments in light of the record and applicable legal principles, we affirm the October 31, 2018 order for the reasons stated by Judge Cimino in his well-reasoned oral opinion. We add the following comments.

The record establishes Rivera created a bailment when she left her dog at defendants' home. "A bailment may be created by contract, either express or implied, or by operation of law or statute." LaPlace v. Briere, 404 N.J. Super.

585, 598 (App. Div. 2009). "The cases dealing with a chattel of one person which is left by him on the premises of another, indicate that there is a bailment if the latter is given primary control of the chattel for the time being." Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J. Super. 467, 469-70 (App. Div. 1952). For example, a bailment is created when jewelry is checked with a swimming pool attendant, diamonds are delivered to a retail jeweler for sale, an automobile is left in a shop to be washed, and an airplane is stored in a hanger. Id. at 470; see also State v. Goodmann, 390 N.J. Super. 259, 266-67 (App. Div. 2007) (holding film left with a store for developing gave rise to a bailment); Jasphy v. Osinsky, 364 N.J. Super. 13, 18 (App. Div. 2003) (noting a bailment arose when fur coats were left with defendant for storage and cleaning).

Here, Rivera left her dog in defendants' primary control for several days. That Rivera did not have the ability to remove the dog from defendants' home was established when her daughter discovered the dog locked in defendants' basement with Reali present with no key to the basement door. Rivera was not permitted access to her dog until Canseo returned to the home.

"When a bailment has mutual benefit for the bailor and bailee, the bailee has a duty to 'exercise reasonable care for the safekeeping of the chattel bailed.'" Jasphy, 364 N.J. Super. at 18-19 (quoting Parnell v. Rohrer Chevrolet Co., Inc.,

95 N.J. Super. 471, 477 (App. Div. 1967)). The bailment of Rivera's dog was for the parties' mutual benefit, as both expected to profit from the mating.

While a bailee is not an insurer of goods, "where goods subject to a bailment are not returned or are damaged or lost, the bailor may be able to recover under theories of either conversion or negligence." LaPlace, 404 N.J. Super. at 600.

> Once a bailment exists and the loss of the goods while in the bailee's possession is established, a presumption of negligence arises, requiring the bailee to come forward with evidence to show that the loss did not occur through its negligence or that it exercised due care.
>
> [Jasphy, 364 N.J. Super. at 19.]

Rivera made a prima facie showing her dog became ill while in Canseo's care. She attributes the dog's illness to either Canseo's failure to feed the dog or its ingestion of food to which it was unaccustomed. Canseo, however, testified he tried to give the dog the food left by Rivera, which the animal refused to eat, and it instead ate food he put out for his dog. Canseo's testimony was sufficient to overcome the presumption of negligence. Moreover, the presumption was overcome by the veterinarian records, which do not attribute the dog's illness to a lack of food or ingestion of food to which the animal had an adverse reaction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1580-18T1